**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 06-4464**

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JOEY TREMAINE SMITH,

Defendant - Appellant.

———————

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Fox, Senior District Judge.  (7:04-cr-0046-F)

———————

Submitted:  January 9, 2007          Decided:  January 30, 2007

———————

Before WILKINS, Chief Judge, and WILLIAMS and KING, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

Thomas P. McNamara, Federal Public Defender, G. Alan DuBois, Assistant Federal Public Defender, Diana H. Pereria, Research and Writing Attorney, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  George E. B. Holding, United States Attorney, Anne M. Hayes, Eric D. Goulian, Assistant United States Attorneys, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Joey Tremaine Smith entered a conditional guilty plea to one count of being a felon in possession of a firearm, in violation of 18 U.S.C.A. §§ 922(g)(1) & 924 (West 2000).  Smith appeals the partial denial of his motion to suppress statements that he contends were obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966).  Because Smith did not make the statement at issue on appeal in response to interrogation or its functional equivalent, we affirm.

I.

It is undisputed that on August 8, 2003, officers from the Wilmington, North Carolina Police Department obtained warrants to search Smith's residence and vehicle, and decided to execute the vehicle search warrant when they initiated a traffic stop of the vehicle.  The officers initiated the stop because Smith was driving with a suspended or revoked license and the car had a burned-out tail light.  During the traffic stop, the officers arrested Smith for driving without a license.  A K-9 unit was called to the scene in reference to the possible presence of narcotics in the vehicle, and the K-9 alerted to the car's trunk.  The officers then searched the trunk and found a quantity of cocaine base.  After his arrest for the traffic violation, Smith was not advised of his Miranda

2

rights.  He was transported directly to his residence, which was approximately one block away.

At least seven police officers escorted Smith to the residence, where they executed the residential search warrant. When the officers and Smith arrived at the house, two people were inside: Smith's visibly pregnant girlfriend, Latasha Pearson, who, like Smith, had a previous felony conviction, and an unidentified man.  Upon entering the house, the officers separated.  Detective Eubanks, along with Detective Cully and two other officers, escorted Smith and Pearson to the living room.  Detective Cully asked Smith and Pearson "if there was anything in the house he needed to know about."  (J.A. at 64.)[*]  Pearson replied that there were two firearms in the bedroom and also apparently implied that the firearms belonged to her.  Detective Eubanks asked where in the bedroom the guns were located, and she replied that one was in the pocket of a coat hanging in the closet and one was on a shelf in the closet.  Detective Eubanks then proceeded to the bedroom, where he located the two firearms in the closet.  Officers photographed the recovered firearms and otherwise secured the residence.

The above facts are undisputed, but there exists some dispute as to the timing of the statement that is the subject of Smith's appeal.  The record is clear that Smith said, "Everything in the

---

[*]Citations to the "J.A." refer to the joint appendix filed with this appeal.

house that's found is mine. It's all mine." (J.A. at 47) (the "It's all mine" statement). Smith's brief indicates that he made the statement "[c]ontemporaneously to the firearms being located," (Appellant's Br. at 7), while the Government's brief indicates that he made the statement "[a]fter the guns were recovered," (J.A. at 5). The district court found that Smith made the statement "[u]pon hearing that the firearms had been located." (J.A. at 109.) On appeal, the Government concedes that "[t]he record reflects that the district court's finding that the defendant made his admission '[u]pon hearing that the firearms had been located' . . . is unsupported," but argues that "[t]he imminent discovery of the firearms would have provided the same motivation for the defendant's statement as the actual recovery of the firearms," making the district court's error irrelevant. (Appellee's Br. at 11-12.)

It is undisputed that after Smith claimed ownership of the guns, Sergeant Pettus informed Detective Eubanks that Smith had asserted responsibility for the guns. Detective Eubanks confronted Smith and Pearson with their inconsistent statements, stating that someone was lying about ownership of the guns. Pearson responded that she was trying to protect Smith, and Detective Eubanks asked Smith, "You're going to let her go to jail for you?" (J.A. at 66, 109-10.) In response, Smith admitted that the guns belonged to him, and in response to further questioning by Detective Eubanks,

4

he stated that he obtained the guns from a "crackhead" or "base head." (J.A. at 67.) Smith was then taken to the police station for processing, where he was advised of his <u>Miranda</u> rights and chose to assert his right to counsel and his right to remain silent.

In April 2004, a grand jury in the Eastern District of North Carolina returned a one-count indictment charging Smith with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) & 924. Smith sought to suppress both his initial "It's all mine" statement and his later statements admitting ownership of the guns and acknowledging their source. After conducting a hearing on the suppression motion, the district court granted the motion in part and denied it in part. The district court granted the motion to suppress with respect to the later statements, which the Government conceded were obtained in violation of <u>Miranda</u>, but denied suppression of the earlier "It's all mine" statement, finding that it was made voluntarily.

Pursuant to a plea agreement in which Smith reserved the right to appeal the order partially denying his suppression motion, Smith entered a conditional guilty plea. The district court sentenced him to 63 months' imprisonment to be followed by a three-year term of supervised release and ordered him to pay a $3,160 fine. Smith timely appealed. We have jurisdiction pursuant to 28 U.S.C.A. § 1291 (West 2006).

II.

Miranda prohibits the prosecution from using "statements . . . stemming from custodial interrogation of [a] defendant unless it demonstrates the use of procedural safeguards effective to secure the [Fifth Amendment] privilege against self-incrimination." 384 U.S. at 444. The district court found that Smith was in custody at the time he made the challenged statement, and the Government does not dispute that finding. Thus, the sole question at issue on appeal is whether the district court erred in concluding that Smith made the "It's all mine" statement voluntarily.

In Rhode Island v. Innis, 446 U.S. 291 (1980), the Supreme Court defined interrogation as "express questioning or its functional equivalent," which the Court further defined as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Id. at 300-01. Innis cautioned, however, that not all statements obtained from a suspect in custody are to be considered the product of interrogation. Id. at 300 ("Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence.").

Smith argues that he made the statement in response to Officer Cully's question asking whether there was anything in the house the officers should know about. We disagree. Smith's statement

6

acknowledging ownership of the house's contents cannot logically be described as directly responsive to Cully's general inquiry into whether there was anything in the house of which the officers should be aware. The record is clear that Pearson's response and subsequent brief exchange with detective Eubanks identifying the precise location of the guns, coupled with the knowledge that their discovery was imminent, prompted Smith's admission. We conclude that the exchange between Pearson and the officers did not represent the functional equivalent of interrogation of Smith, as the officers could not reasonably have foreseen that their exchange with Pearson would prompt such an incriminating response from Smith. See Innis, 446 U.S. at 302-03; United States v. Calisto, 838 F.2d 711, 718 (3d Cir. 1988) (concluding that, even if it would be reasonable to expect a suspect in custody during a search of his home to make "a protest of some kind" upon hearing an officer suggest that, because both men's and women's clothing was found in the room in which drugs were discovered, it might be necessary to secure an arrest warrant for the suspect's daughter, it would not be "reasonable to expect an inculpatory response from [the suspect]" (emphasis added)). Accordingly, we agree with the district court that the statement Smith seeks to suppress was not made in response to interrogation or its functional equivalent.

III.

In sum, we conclude that the district court did not err in partially denying Smith's motion to suppress inculpatory statements he made during the search of his house. We therefore affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>